# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Annette and Joseph Gervasio,** | : | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 3:10-2430** |
| v. | : | **(JUDGE MANNION)** |
| **Chelsea Pocono Finance, LLC,** | : | |
| *et. al.* | : | |
| **Defendant** | : | |
| | : | |

## MEMORANDUM

Presently before this court is the defendant's motion for summary judgment on the plaintiffs' claims of (1) negligence and (2) loss of consortium. (Doc. No. 57).

**I.  BACKGROUND**

This case arises out of a slip and fall accident where plaintiff Joseph Gervasio slipped on a patch of ice while shopping at the shopping area known as "The Crossings Premium Outlets" ("the Crossings") owned by defendants Chelsea Pocono Finance, LLC, and C.P.G. Partners, L.P. (collectively referred to as "Chelsea"). (Doc. No. 63, ¶ 1). On January 24, 2009, the plaintiffs went shopping at the Crossings, a large outdoor shopping center located in Tannsersville, Pennsylvania. (Doc. No. 57, Exh. B, p. 57). The weather was cold and there were light snow flurries falling as the plaintiffs drove to and arrived at the Crossings. The snow stuck to the grass, but not to the roads or pavement. (Id., p. 60-61, 67; Exh. C, p. 28). They arrived at

approximately 1:30 PM and parked their car in a lot parallel to the Stride Rite store. (Doc. No. 57, Exh. B, p. 62, 65-66). In the parking lot, there were mounds of snow piled near the lampposts, but aside from those mounds, the lot was only wet. (Id. p. 67-68). Before the accident, neither of the plaintiffs saw snow or ice on the sidewalks. (Id. p. 78; Exh. C, p. 28-29).

At 1:50 PM, Travis Schuster, the defendant's employee and the custodial supervisor for the Crossings, drove by the area where the plaintiff fell, known as "the bus lane sidewalk." (Doc. No. 63, ¶ 3; Doc. No. 57, Exh. D, p. 16, 49-50). This sidewalk runs along the side of the Stride Rite store and is parallel to the parking lot where the plaintiffs parked. (Doc. No. 57, Exh. B, p. 81-82). Mr. Schuster's job included ensuring the sidewalks are clear of ice caused by snow, water, and excess runoff. (Doc. No. 57, Exh. D, p. 26-27). According to him, the weather was "cloudy and cool." (Id., p. 39). The ice he has encountered at the Crossings "is generally clear and see through," depending on the thickness. (Id., p. 41). As he drove by, he checked the bus lane sidewalk specifically for "ice spots" by conducting a visual inspection. (Id., p. 34, 49-50). He did not see any ice and observed the sidewalk to be dry. However, this was an area where he encountered an accumulation of ice at least twice in the past four years. (Id., p. 34, 41). Nicholas Bello, who worked security at the Crossings and was charged with reporting icy conditions, encountered ice spots on the sidewalk adjacent to the Stride Rite more than ten times during his employment at the Crossings. (Doc. No. 57, Exh. G, p. 25-26).

At 3:30 PM, the plaintiffs returned to the Stride Rite. (Id. p. 74, 108). Mrs. Gervasio went into the store, while Mr. Gervasio returned to the car to drop off some bags. (Id. p. 76). After unloading the items, Mr. Gervasio

walked back toward the store, taking a shortcut across two travel lanes and onto the bus lane sidewalk. (Id. p. 81-83; Doc. No. 63, ¶ 3). As Mr. Gervasio placed his right foot onto the sidewalk, which initially appeared to be free from ice and snow, he slipped and fell onto his right side, his right arm falling underneath him. (Doc. No. 57, Exh. B, p. 86-88). An older woman[1] nearby immediately told him he "went down on the ice." (Id., p. 88). A few moments later, Mr. Gervasio was helped to his feet by his wife; it was then he saw a "crystal clear" sheet of "transparent" or "invisible" ice. (Id., p. 90-91). Mrs. Gervasio saw no snow on the ground where her husband fell, but saw the ice after Mr. Gervasio indicated that he fell on ice. (Doc. No. 57, Exh. C, p. 120).

The plaintiffs left the Crossings and went to the hospital for several hours. (Doc. No. 57, Exh. B, p. 101-102). Later, they returned to the Crossings and Mrs. Gervasio went to meet with security. (Doc. No. 57, Exh. C, p. 41). She met with Mr. Bello and explained what had happened to Mr. Gervasio. (Doc. No. 57, Exh. G, p. 18). Neither of the plaintiffs, nor Mr. Bello, can recall what occurred during this brief meeting, but Mrs. Gervasio obtained an incident report about the fall from the Crossing's security department. (Doc. No. 57, Exh. B, p. 112; Doc. No. 57, Exh. C, p. 44-45; Doc. No. 74, Exh. D). That security report indicates that the temperature at the time of the incident was in the "low 30's" and under the "cause" of the accident lists "snow and ice." (Doc. No. 64, Exh. D). It further notes that Mr. Schulster "inspected the area...looking for ice spots to tend to when he came on duty, but the bus lane sidewalks were dry." (Id.).

Douglas Smith, the general manager of the Crossings, stated Crossings

---

[1]Neither the plaintiffs, nor the defendants, have been able to locate this witness.

3

personnel "inspect common areas of the property, including sidewalks and parking lots, for potentially hazardous conditions such [as] ice." (Doc. No. 57, Exh. E, ¶ 6). While the Crossings is open, the sidewalks are inspected several times per hour by Crossing's staff; however, the evidence here indicates there was only one inspection of the bus lane sidewalk between 1:50 PM and the time of the incident. (Id., ¶9). The staff may conduct the inspections either on foot, or from a vehicle. (Id., ¶8) .Mark Davies, a maintenance supervisor for the Crossings at the time of this incident, said the inspections were often done from vehicles, but admitted he did not know how to tell the difference between a wet spot and an icy spot while inspecting from a vehicle. (Doc. No. 57, Exh. F, p. 13, 29). He further said that foot inspections would be better for determining whether ice spots are present. (Id., p. 29).

## II. PROCEDURAL HISTORY

The court will only review the procedural history necessary to frame the issues for the parties involved in this motion. This action was commenced on November 11, 2010 when the plaintiffs filed their complaint. (Doc. No. 1)**.** The original complaint listed numerous defendants, but as of the time of this motion, all but two of the defendants have been dismissed by stipulation. (Doc. No. 53). The remaining defendants filed a motion for summary judgment pursuant to Fed. R. Civ. Pro. Rule 56 on April 26, 2013. (Doc. No. 57). Plaintiffs filed a brief in opposition on May 31, 2013. (Doc. No. 64). Both parties submitted copies of various depositions and exhibits in support of their respective filings.

### III. STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Casualty & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249 ; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial

5

burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

**IV. DISCUSSION**

As this is a claim for damages that occurred while the plaintiff was on a defendant's property, this court must first determine whether the plaintiff is a trespasser, licensee, or invitee. *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983). The parties do not dispute that the plaintiff was an invitee at the time of the incident; he was at the Crossings shopping with his wife. See *Craig v. Franklin Mills Assocs., L.P.*, 555 F.Supp. 2d 547, 549 (E.D.Pa. 2008) (determining shopper at mall qualified as an invitee under Pennsylvania law). Pennsylvania has adopted the Restatement (Second) of Torts §§341, 343, and 343A, imposing on landowners a "duty to protect invitees from foreseeable harm." *Carrender*, 469 A.2d at 123. Under Pennsylvania law, a possessor of land will be subject to liability only if he or she:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and

6

> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts §343. Further, the plaintiff must present sufficient evidence to show: (1) the defendant knew or, by using reasonable care, should have known of a dangerous condition; and (2) the defendant helped to create a harmful condition or had actual or constructive notice of the dangerous condition. *Zito v. Merit Outlet Stores*, 647 A.2d 573, 575 (Pa. Super. Ct. 1994) (citing *Multrey v. Great A. & P. Tea Co.*, 422 A.2d 593, 596 (Pa. 1980)). None of the parties argue the defendants had actual notice of any dangerous condition at the time of the incident; therefore, the central issue for this motion is whether the defendants had constructive notice of the ice patch.

When determining whether a defendant had constructive notice, "one of the most important factors to be taken into consideration is the time elapsing between the origin of the defect or hazardous condition and the accident." *Craig*, 555 F.Supp. 2d 547, 500 (quoting *Neve v. Insalaco's*, 771 A.2d 786, 791 (Pa. Super. Ct. 2001)). Other factors include:

> the size and physical condition of the premises, the nature of the business conducted thereon, the number of persons using the premises and frequency of such use, the nature of the defect and its location on the premises, its probable cause and the opportunity which [the] defendant, as a reasonably prudent person, had to remedy it.

*Lanni v. Pennsylvania Railroad Co.*, 88 A.2d 887, 889 (Pa. 1952). Although "[t]he mere happening of an accident is not evidence of negligence," *Rogers v. Horn & Hardart Baking Co.*, 127 A.2d 762, 763 (Pa. Super. Ct. 1956), a plaintiff may present sufficient circumstantial evidence to show that a defect

7

"had [existed] long enough so that in the exercise of reasonable care the defendant's employees should have discovered and removed it." *Rumsey v. Great Atlantic & Pac. Tea Co.*, 408 F.2d 89, 91 (3d Cir. 1969) (applying Pennsylvania law).

While many cases deal with constructive notice of a man-made condition, naturally occurring conditions, such as ice, are different and require a distinct analysis. In those cases, the plaintiff must present "evidence that the ice was observable for any significant period of time prior to the accident," otherwise "the jury may not reasonably infer" a possessor of property "had constructive notice of the hazardous condition." *Tameru v. W-Franklin, L.P.*, 350 F.Appx. 737, 740 (3d Cir. 2009). Although the weather conditions around the time of an accident may be conducive to the formation of ice, "constructive notice cannot be inferred from this mere possibility" alone. *Id.* However, constructive knowledge may be inferred when the defendant knows "of both the weather condition at the time of the accident and the fact that the weather condition created hazards on the premises." *Id.*

In *Rogers*, the plaintiff slipped on a substance on the floor of a restaurant, but offered "no testimony as to how or when this slippery substance came to be on the floor." 127 A.2d at 764. The Pennsylvania Superior Court determined summary judgment was appropriate because the plaintiff presented insufficient evidence to show the defendant's actual or constructive notice of a "stew or something" on the floor. There was nothing to show the spill was there for a sufficient period of time to put the restaurant on notice. *Id.* Similarly, in *Pierce v. Delaware*, 57 A.2d 876, 877 (Pa. 1948), the plaintiff slipped on something "soft and very slippery," later determined to be a grease spill, but presented no evidence as to how long the grease had

been present. The Pennsylvania Supreme Court determined the plaintiff "did not produce sufficient evidence" on the subject of constructive notice and reversed the trial court's denial of summary judgment. *Id.* The Third Circuit, applying Pennsylvania law, determined the condition of a piece of lettuce that caused a shopper to fall was sufficient to create an issue of fact for the jury. *Rumsey*, 408 F.2d at 90-91. The lettuce was "old, not fresh, wilted, brown, or yellow" and "segmented into small pieces" an inch or two in length. *Id.* at 90. The wilting, discoloration, and breakage into unusually small pieces was consistent with the lettuce being exposed "to traffic over a period of time," creating a "jury issue" as to "the question of . . . constructive notice of the unsafe condition." *Id.* at 91.

With *Rogers, Pierce,* and *Rumsey* as guides, we turn to the cases relied upon by the parties in their respective briefs. The plaintiffs point this court to *Spiers v. Mariott International*, 2009 WL 3365877 (E.D.Pa. 2009). In *Spiers*, the plaintiff was stuck and injured by a malfunctioning automatic door at the entrance of a hotel. *Id.* at *1. The general manager knew that specific door had a history of malfunctioning and required maintenance on several occasions prior to the incident. *Id.* Moreover, the hotel did not have the door's manufacturer perform regular maintenance and only ordered maintenance on an "as-needed basis." *Id.* The manager also failed to perform the proper "Daily Safety Checks" as recommended by the door's manufacturer. *Id.* at *5. Lastly, the manager "did not know if the Hotel employees conducted any type of daily or formal inspection of the doors." *Id.* at *1. The court denied the defendant's motion for summary judgment, determining the maintenance and inspection procedures, or lack thereof, created an issue of fact as to whether proper inspection and maintenance would have revealed the defect in a door known

9

to malfunction. *Id.* at *5.

The defendants rely upon *Tameru v. W-Franklin, L.P.,* 2008 WL 4272637 (E.D.Pa. 2008). In that case, the plaintiff walked out of a hotel and slipped on ice that had formed near a covered entrance way. *Id.* at *2. The plaintiff established there were piles of snow near the hotel from a recent snow storm, the area where she fell was wet, and there was a "patch of black ice with a skid mark in it" in front of a covered entrance that caused the fall. *Id.* The area where the plaintiff fell was inspected by security approximately one hour and fifteen minutes prior to the accident, but no ice was present. *Id.* at *3. After the fall, a security guard noted the location was wet from pedestrians tracking in water from melting snow, but did not see any ice. *Id.* The hotel's director of security said he knew the area could get wet, but had never observed or had reports of ice in that specific location before. *Tameru,* 2008 WL 4272637 at *3. The plaintiff's meteorological expert testified that for the two hours leading up to the fall, the temperature was 30 degrees Fahrenheit, two degrees below the freezing point of water. *Id.* at *5.

Even with this evidence, the court granted the motion for summary judgment, basing its decision on the adequacy of the inspections and the lack of any observation of ice at the location any time before this incident, including the inspection one hour and fifteen minutes prior. *Id.* at *6. The court specifically rejected the plaintiff's argument that "general weather conditions" at the time of the accident can impute constructive "notice of a problem in a very specific location" with no history of prior hazards. *Id.* at *6. The Third Circuit affirmed the trial court's determination, relying on the fact that there were no prior observations of ice in the area and that security checked the area and observed no ice one hour and fifteen minutes before the accident.

*Tameru*, 350 F.Appx. At 740-41. Given there were no prior incidents of ice at the covered entryway, the court also determined that a drop in temperature just below freezing is insufficient to put the defendant on notice of ice formation at that location. *Id.*

The case at hand falls somewhere between *Tameru* and *Spiers*. The two pronged determination laid out by the Third Circuit in *Tameru* is instructive. Constructive knowledge of a dangerous weather-related condition may be imputed on a defendant when (1) the defendant knows of weather conditions at the time of the incident and (2) that the weather condition creates a specific hazard on the premises. *Tameru,* 350 F.Appx. at 740.

Turning to the defendant's knowledge of the weather, the plaintiffs both noted it was snowing that day, but the snow was melting on contact with paved areas. The defendant's injury report also notes "snow" as a cause of the accident, with temperatures in the low 30's. (Doc. No. 64, Exh.D). Mr. Schuster said the day was cloudy and cool, but denied seeing any precipitation. However, one hour and forty minutes before the incident he was conducting inspections to check specifically "for ice spots to tend to," possibly caused by snow or excess water in the area where Mr. Gervasio fell. (Doc. No. 57, Exh. D, p. 34; Doc. No. 64, Exh. D). There is a fair inference that he was checking for ice spots on the bus lane sidewalk because he knew conditions were conducive to ice formation.

The defendant argues that the inspection by Mr. Schuster is evidence of a lack of constructive notice because he checked the area and observed it to be dry. However, the particular nature of the inspection distinguishes this case from *Tameru*. In that case, hotel security personnel were conducting general inspections of the premises and were not solely looking for ice. *See*

2008 WL 4272637 at *3 (noting security looked for "problems such as obstacles blocking entrances and exits, general hazardous conditions, and icy conditions"). Moreover, the hotel security in *Tameru* inspected the area in question on foot, while Mr. Schuster conducted his check for ice from a moving vehicle he was driving, despite noting ice to be "clear" and "see through". *Id.* Another member of the Crossings' maintenance staff questioned whether it was even possible to distinguish ice spots from wet spots on the sidewalk from a moving vehicle. (Doc. No. 57, Exh. F, p. 29). Lastly, the ice in this case was consistent with Mr. Schuster's experience; both plaintiffs reported the ice was almost transparent and difficult to see. On those facts, the inspection carries less weight than in *Tameru*.

The evidence, viewed in the light most favorable to the plaintiff, satisfies the knowledge requirement of *Tameru*: (1) the plaintiffs observed the weather was cold and it was lightly snowing, while Mr. Schuster said it was cool that day; (2) the defendant's report indicated temperatures in the low 30's with ice and snow as the cause of the accident; (3) Mr. Schuster admitted that snow is often a contributing factor to the creation of ice spots at the Crossings; (4) the plaintiffs' observations of the ice as "transparent" or "invisible" was consistent with Mr. Schuster's description of ice formations at the Crossings[2]; and (5) the inference that Mr. Schuster was inspecting the bus lane sidewalk for ice because he was aware the weather was ripe for creating icy conditions. 350 F.Appx. at 740. These facts distinguish this case from *Rogers* and *Pierce* as well. In each of those cases, the plaintiff fell on an object that did not occur

---

[2]Although Mr. Gervasio used words like "crystal clear," "transparent," and "invisible," he, along with his wife and another witness, were all able to see the ice while standing in the area after the fall.

naturally. There are no whether conditions conducive to spilled soup or a stray grease spot. *See Pierce*, 57 A.2d at 405 (holding lack of evidence showing how long grease spot had been on stair required granting of summary judgment for lack of defendant's constructive notice of danger); *Rogers*, 127 A.2d at 763 (holding insufficient evidence that spilled stew was on ground long enough to impute defendant's constructive notice of hazard). As such, the defendant had sufficient knowledge of the specific weather conditions at the time of the incident.

Next, there must be a determination as to whether the defendant, having knowledge of the weather conditions, knew those conditions created a hazard on the bus lane sidewalk. *Tamaru*, 350 F.Appx. at 740. Both Mr. Schuster and Mr. Bello admitted they had observed ice on the bus lane sidewalk multiple times in the past. (Doc. No. 57, Exh. D, p. 41; Exh. G, p. 25). Mr. Bello encountered ice at the location of the incident "more than ten times" during his time working security at the Crossings, while Mr. Schuster observed ice at least twice at that location. (Id.). Security personnel and maintenance personnel were charged with reporting ice. (Doc. No. 57, Exh. E ¶ 6-8; Exh. G, p. 26-27). Unlike *Tamaru*, where the hotel had no knowledge of ice ever forming at the location of the incident, here the defendant's had two separate employees reporting ice a combined twelve times on the bus lane sidewalk. *See* 350 F.Appx. at 740 ("The security manager testified that he had never before observed ice in the covered entryway area."). Although a check of the areas at issue in both *Tameru* and this case occurred less than two hours beforehand, Mr. Schulster conducted a specific inspection for "clear" and "see through" ice from the driver's seat of a moving vehicle. *See id.* (noting security walked through the area to check for ice). As previously

stated, another member of the defendant's maintenance questioned the effectiveness of vehicle inspections for ice, stating that checks on foot would be more effective. (Doc. No. 57, Exh. F, p. 29). Lastly, just after the incident, the plaintiffs and an older woman at the scene could see the ice from where they were standing. (Doc. No. 57, Exh. B, p. 90; Exh. C, p. 120).

This notice of prior ice formation and the visibility of ice formations brings this case closer in line with *Speirs*. That court held that "there is a question regarding whether [the defendant] had an enhanced duty of inspection because there were previous problems with the [hotel's automatic] doors." 2009 WL 3365877, at *5. The same question arises here: whether the defendant's knowledge of the transparent ice formations on the bus lane sidewalk required the defendant's to adopt better inspection procedures when the weather was conducive to ice spots.

Although the condition of the ice supports the defendant's position, it is not the sole evidence of constructive knowledge in this case. Unlike in *Rumsey* where the yellowed and tattered lettuce demonstrated that it had been on the floor for some significant time, the ice here did not have marks or prints on it to indicate its age. *See* 408 F.2d at 93 (noting condition of the lettuce raised an issue of fact regarding whether it "had been steeped in or on by others" over a length of time). However, this case is distinguishable because there are no naturally occurring scenarios in a grocery store that increase the risk of lettuce spilling on the ground; moreover, there were no special conditions present in *Rumsey* that would make lettuce spills more likely at the time of the accident. As such, the length of time the lettuce was on the ground, as evidenced by its condition, was the only evidence the court considered in determining constructive notice. *See Rumsey*, 408 F.2d at 90-

91 (discussing condition of the lettuce as sufficient to raise an issue of fact for the jury's determination). Here, the defendant's knowledge of both the weather conditions and prior specific instances of ice formation at the location of the incident are sufficient for constructive notice.

The facts and inferences drawn therefrom, viewed in the light most favorable to the plaintiff, demonstrate the defendant was on constructive notice of a dangerous condition on the property. Therefore, there is a material issue of fact to present to the jury regarding the reasonableness of the defendant's procedures for inspecting the location of the incident for ice spots on the day of the incident.

## V. CONCLUSION

For the forgoing reasons, the defendant's motion for summary judgment is **DENIED**. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: October 10, 2013**
O:\Mannion\shared\MEMORANDA - DJ\2010 MEMORANDA\10-2430-01.wpd